UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

VERAMARK TECHNOLOGIES, INC.,
CALERO SOFTWARE, LLC,

               Plaintiffs,

   v.

JOSHUA B. BOUK, CASS INFORMATION
SYSTEMS, INC.,

               Defendants.

———————————————————

**DECISION AND ORDER**

14-cv-6094 EAW

*(Seal: UNITED STATES DISTRICT COURT · FILED APR 02 2014 · MICHAEL J. ROEMER, CLERK · WESTERN DISTRICT OF NY)*

## **INTRODUCTION**

Plaintiffs Veramark Technologies, Inc. ("Veramark") and Calero Software, LLC ("Calero") have sued a former employee, defendant Joshua Bouk, and his new employer, defendant Cass Information Systems, Inc. ("Cass"), alleging breach of an employment agreement signed by Mr. Bouk and tortious interference with that agreement by Cass. (Dkt. 1-1). Plaintiffs seek a preliminary injunction to prevent Mr. Bouk from "accepting or commencing employment with, or otherwise providing services to, Cass" and they similarly seek to preliminarily enjoin Cass from employing Mr. Bouk. (Dkt. 4 at 1). Because Plaintiffs have not met the standard for granting a preliminary injunction, the Court denies the requested relief.

## **FACTUAL BACKGROUND**

Mr. Bouk began his employment with Veramark on March 3, 2008, as Vice President of Customer Services. (Dkt. 13-1 at ¶ 3). Veramark is a provider of Telecom

Expense Management software and services, which means that it "helps businesses manage the lifecycle of communications expenses across diverse business units, geographies, etc." (Dkt. 4-2 at ¶ 2). Veramark subsequently became a wholly owned subsidiary of plaintiff Calero, which was formed in 2013. (Dkt. 1-1 at ¶ 2; Dkt. 4-2 at ¶ 1).

Mr. Bouk ultimately held the position of Veramark's Vice President of Sales. (Dkt. 4-2 at ¶ 5).[1] According to Plaintiffs, Mr. Bouk was Veramark's highest ranking sales executive, serving as Veramark's "senior-most executive point of contact with key customers and channel partners. . . ." (*Id.* at ¶ 5). Mr. Bouk's base salary exceeded $157,000 and he also received "substantial commission and bonus compensation, Restricted Stock Awards, stock options and other employee benefits." (*Id.* at ¶ 8).

Shortly before commencing his employment, Mr. Bouk entered into an Employment Agreement with Veramark dated January 25, 2008 ("the Agreement"). (*Id.* at ¶ 3; Dkt. 4-3 at 6-15). The Agreement, which is governed by New York law (*id.* at ¶ 6(c)), contains various provisions with respect to post-employment conduct by Mr. Bouk. Specifically, Mr. Bouk agreed not to use or disclose information defined as "Confidential" under the terms of the Agreement, and to return all such information upon termination of his employment. (Dkt. 4-3 at ¶¶ 7(a) & (b)). Mr. Bouk also agreed that

---

[1]     In his letter of resignation, Mr. Bouk states that he is resigning his position as "Senior Vice President of Sales" at Veramark, and declining the offer to become "Vice President of Sales" at Calero. (Dkt. 4-4). In his declaration, Mr. Bouk does not specifically address whether he held the position of "Vice President of Sales" for Veramark, as alleged by Plaintiffs, or whether his title was actually "Senior Vice President of Sales." (Dkt. 13-1).

for 12 months following the termination of his employment, he would not compete with Veramark (*id.* at ¶ 7(c)), he would not solicit Veramark employees (*id.* at ¶ 7(d)), and he would not solicit Veramark customers. (*Id.* at ¶ 7(e)). Specifically, the Agreement has the following restrictive covenants:[2]

### *Paragraph 7(c) – The "Non-Compete" Provision*

> [Mr. Bouk] shall not engage . . . in competition with, or directly or indirectly, perform services . . . for . . . any enterprise that engages in competition with the business conducted by [Veramark] or by any of its affiliates, anywhere in the world.

(Dkt. 4-3 at ¶ 7(c)).

### *Paragraph 7(d) – The "Non-Solicitation of Employees" Provision*

> [Mr. Bouk] shall not, directly or indirectly, solicit for employment, offer employment to, or employ . . . any employee or consultant of [Veramark] or any of its affiliates. . . .

(Dkt. 4-3 at ¶ 7(d)).

### *Paragraph 7(e) – The "Non-Solicitation of Customers" Provision*

> [Mr. Bouk] shall not, directly or indirectly, solicit, raid, entice or otherwise induce any customer and/or supplier of [Veramark] or any of its affiliates to cease doing business with [Veramark] or any of its affiliates or to do business with a competitor with respect to products and/or services that are competitive with the products and/or services of [Veramark] or any of its affiliates.

(Dkt. 4-3 at ¶ 7(e)).

---

[2]   The descriptions of the three paragraphs have been added to facilitate the discussion.  In addition, the actual language in the Agreement refers to "the Executive" and "the Company" but those terms have been respectively replaced with "Mr. Bouk" and "Veramark" in this Decision and Order.

On or about January 17, 2014, Mr. Bouk notified Plaintiffs of his intention to resign his employment, providing 30 days' notice pursuant to the terms of the Agreement. (Dkt. 4-4). In his resignation letter, Mr. Bouk advised that he had accepted a position with Cass, but he would "honor" his "commitment to Veramark to not solicit or approach any Veramark customers or employees during the coming year." (*Id.*). Plaintiffs allege that prior to receiving this notice, they offered to increase Mr. Bouk's annual compensation to in excess of $290,000, and that after receiving his resignation, they offered a further increase to more than $350,000 annually. (Dkt. 4-2 at ¶ 8). Mr. Bouk disputes Plaintiffs' claims, instead contending that his position with Veramark was insecure after the change in ownership involving Calero, and that it was only after he announced his resignation that Plaintiffs orally offered to increase his salary. (Dkt. 13-1 at ¶¶ 9, 15).

Mr. Bouk contends that he was told that his last day of employment with Veramark would be January 31, 2014, and therefore Mr. Bouk began his employment with Cass on February 3, 2014. (Dkt. 13-1 at ¶¶ 27, 28). According to Plaintiffs, Mr. Bouk was paid through the 30-day notice period (i.e. until February 16, 2014), although he was not required to be at the office during that entire time period. (Dkt. 17 at ¶ 2). Plaintiffs explain that it was not until Defendants submitted their papers in opposition to the pending motion that they became aware that Mr. Bouk was working for Cass while still being paid by Veramark. (*Id.* at ¶ 3).

According to Mr. Bouk and Cass, Mr. Bouk's employment with Cass was conditioned upon his agreement to comply with the non-solicitation provisions contained

- 4 -

in the Agreement. (Dkt. 13-1 at ¶ 24, Dkt. 13-2 at ¶ 7). After commencement of this litigation, on February 25, 2014, Mr. Bouk signed an acknowledgement to Cass that he would not disclose or use any confidential information belonging to Plaintiffs, and further acknowledging that he would not solicit Veramark customers or employees. (Dkt. 13-1 at 7-8).[3]

## PROCEDURAL HISTORY

On or about February 7, 2014, Plaintiffs filed a complaint in New York State Supreme Court, Monroe County. (Dkt. 1-1). A Notice of Removal with supporting papers was filed by Cass with this Court on February 27, 2014, purporting to invoke this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Dkt. 1). Because the Notice of Removal failed to adequately set forth the basis for this Court's purported jurisdiction, this Court issued an Order to Show Cause on March 3, 2014, requiring the filing of an Amended Notice of Removal that complied with the requirements of 28 U.S.C. § 1332. (Dkt. 3). Cass filed an Amended Notice of Removal on March 10, 2014, wherein it adequately set forth the basis for this Court's jurisdiction based upon diversity of citizenship of the parties. (Dkt. 14).

In the meantime, on March 4, 2014, Plaintiffs filed a "Motion for Temporary Restraining Order and Preliminary Injunction" wherein they sought to temporarily and preliminarily enjoin Mr. Bouk from working for Cass. (Dkt. 4). Concurrently with the

---

[3]   Although the acknowledgment states that Mr. Bouk will not solicit employees or customers of Veramark, its precise language varies to a degree from the language in the Agreement. These differences in language are ultimately irrelevant to the disposition of this motion because Plaintiffs do not contend that Mr. Bouk has violated the non-solicitation provisions.

filing of that motion, Plaintiffs filed a motion for an expedited hearing. (Dkt. 5). The Court conducted a telephone conference with the parties on March 5, 2014, and set a briefing schedule with respect to Plaintiffs' motions. (Dkt. 7, 8). Defendants filed their papers in opposition on March 10, 2014 (Dkt. 11-13), and Plaintiffs filed reply papers on March 12, 2014. (Dkt. 16-19).

On March 13, 2014, this Court issued an Order denying Plaintiffs' application for a temporary restraining order, but granting the application for an expedited hearing. (Dkt. 20). The motion for a preliminary injunction was argued before the Court on March 25, 2014. (Dkt. 25).

## DISCUSSION

### I.   Standard on Motion for Preliminary Injunction

In order to obtain a preliminary injunction, the moving party must establish the following: (1) a likelihood of irreparable harm absent preliminary relief; (2) a likelihood of success on the merits; (3) the balance of equities tipping in favor of the moving party; and (4) the public interest is served by an injunction. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Where the moving party is unable to demonstrate a likelihood of success on the merits, a court may still issue a preliminary injunction if the moving party demonstrates "'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)); *see also Golden Krust*

*Patties, Inc. v. Bullock*, 957 F. Supp. 2d 186, 194 (S.D.N.Y. 2013) (applying the *Winter* standard in a restrictive covenant case and explaining that even where the "sufficiently serious questions" standard is applied, "the movant's overall burden is no lighter than the one it bears under the likelihood of success standard." (quotation and citation omitted)).

The most important prerequisite to issuing a preliminary injunction is irreparable harm. *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). Plaintiffs seeking preliminary injunctive relief must affirmatively "'demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm.'" *Id.* at 118 (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). "The movant is required to establish not a mere *possibility* of irreparable harm, but that it is '*likely* to suffer irreparable harm if equitable relief is denied.'" *Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525, 531 (S.D.N.Y. 2004) (quoting *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990) (emphasis in original)).

Because it is very difficult to calculate monetary damages in the event of the loss of a client relationship "that would produce an indeterminate amount of business in years to come," the violation of an enforceable non-compete constitutes irreparable harm. *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999). Yet, even in non-compete cases where there is an alleged threat to customer goodwill, irreparable harm may not be presumed and must be demonstrated in each case. *Golden Krust*, 957 F. Supp. 2d at 194 (citing *Singas Famous Pizza Brands Corp. v. N.Y. Advertising LLC*, 468 Fed. App'x 43,

46 (2d Cir. 2012)). Often, in the context of an application for a preliminary injunction on a restrictive covenant, the evaluations of irreparable harm and likelihood of success are intertwined. *Int'l Creative Mgmt., Inc. v. Abate*, No. 07 Civ. 1979, 2007 U.S. Dist. LEXIS 22964, at *7 (S.D.N.Y. March 28, 2007) ("In non-compete cases . . . the irreparable harm analysis and the likelihood of success on the merits analysis are closely related and often conflated.").

Of note, Plaintiffs have submitted various admissibility objections, such as hearsay, to the declarations submitted by Defendants. (Dkt. 16-1). However, on a motion for a preliminary injunction, the rules of evidence are not strictly applied, and the standard of proof is not the same as the one applicable to a motion for summary judgment under Fed. R. Civ. P. 56. *See Mullins v. City of N.Y.*, 626 F.3d 47, 52 (2d Cir. 2010) (hearsay evidence admissible in connection with preliminary injunction application); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2949 ("[T]he question has arisen whether affidavits on a motion for a preliminary injunction must conform to the strict standards of Rule 56(c)(4) for affidavits on a motion for summary judgment. . . . The federal rules do not explicitly require this standard to be applied to preliminary-injunction affidavits and a consideration of the different policies that underlie Rule 56 and 65 indicates this standard should not be imposed on applications under Rule 65.").

## II.   **Plaintiffs Fail to Demonstrate Irreparable Harm**

Plaintiffs argue that they will suffer irreparable harm absent preliminary injunctive relief due to the threat to their customer relations caused by Mr. Bouk's employment with

Cass (Dkt. 4-1 at 12) and the loss of Mr. Bouk's alleged "unique" services. (*Id.* at 13).

Plaintiffs also argue that Mr. Bouk admitted to the presence of irreparable harm in

paragraph 7(g) of the Agreement. (*Id.* at 12-13). The Court considers each of these

arguments in turn.

### A.   Loss of Customer Relations

Plaintiffs correctly argue that a threat to customer goodwill constitutes a threat of

irreparable harm for which preliminary injunctive relief is appropriate. However,

Plaintiffs offer no evidence that Mr. Bouk's employment by Cass threatens Veramark's

customer relations. Rather, any notion that Mr. Bouk's employment will threaten

Veramark's customer goodwill is specifically undermined by the evidence offered by Mr.

Bouk and Cass that Mr. Bouk will *not* solicit Veramark customers as part of his duties

with Cass. Plaintiffs have offered no evidence indicating otherwise and in fact, the

complaint does not allege that Mr. Bouk has violated or intends to violate the non-

solicitation provisions.[4] (Dkt. 14-1 at ¶ 20).

---

[4] During oral argument on the instant motion, Plaintiffs' counsel suggested that the Court preliminarily enjoin Mr. Bouk from violating the non-solicitation provisions of the Agreement. However, neither the complaint nor the moving papers make any mention of a breach or potential breach of the non-solicitation provisions. The Court will not enter a preliminary injunction that was not requested in the moving papers on a claim that does not appear in the complaint, especially because no ripe, justiciable controversy exists between the parties as to the non-solicitation provisions. See *Accelecare Wound Ctrs., Inc. v. Bank of N.Y.*, No. 08 CIV. 8351, 2009 U.S. Dist. LEXIS 71862, at *19-20 (S.D.N.Y. Aug. 11, 2009) (dismissing declaratory judgment claim that a non-competition agreement was unenforceable on ripeness grounds where the employees had no intention of competing).

Plaintiffs argue that simply refraining from solicitation of customers is insufficient, and only through compliance with the non-compete provision in the Agreement will Plaintiffs' customer goodwill be protected. Neither the law nor the facts support Plaintiffs' argument.

Plaintiffs cite a number of cases in support of the argument that enforcement of a non-solicitation provision alone is not sufficient to protect customer goodwill, and rather a broad non-compete provision must also be in place. (Dkt. 18 at 6-7). However, the cases cited by Plaintiffs do not support this argument. For example, in *Johnson Controls,* the "non-compete" at issue was expressly limited to customers and proposed customers serviced while employed by the plaintiff. 323 F. Supp. 2d. at 530. In *Innoviant Pharmacy, Inc. v. Morganstern*, 390 F. Supp. 2d 179 (N.D.N.Y. 2005), the requested relief was limited in scope to preventing the former employee from contacting identified referral sources. *Id.* at 183. Similarly, in *Ecolab Inc. v. Paolo*, 753 F. Supp. 1100 (E.D.N.Y. 1991), the former employees were limited from competing for former customers who were serviced while employed by the plaintiff. *Id.* at 1102, 1115. In *Greystone Staffing, Inc. v. Goehringer*, 14 Misc. 3d 1209(A), 836 N.Y.S.2d 485 (Sup. Ct., Nassau Cnty. 2006), the Court granted preliminary injunctive relief prohibiting the defendant employee from soliciting business from the plaintiff's customers but did not enforce the non-compete portion of the agreement. *Id.* at *16-17.

Plaintiffs also cite *Group Health Solutions, Inc. v. Smith,* 32 Misc. 2d 1244(A), 938 N.Y.S.2d 227 (Sup. Ct., N.Y. Cnty. 2011), for the proposition that non-solicitation is not enough to protect customer goodwill. (Dkt. 18 at 2). Plaintiffs' reliance on *Group*

*Health Solutions, Inc.* is misplaced.  Not only did the case deal with a motion to dismiss as opposed to a preliminary injunction motion, but the so-called non-compete at issue in *Group Health Solutions, Inc.* was actually a non-solicitation agreement (an agreement not to solicit insurance business from the former employer's insurance accounts).  *Id.* at *2.

In other words, where an employer proffers protecting customer goodwill as the legitimate interest it seeks to protect with a restrictive covenant, the covenant must actually protect that interest.  A broad non-compete that baldly prevents competition will not be enforced, particularly where the employer is already protected by a non-solicitation agreement.  This is the standard set forth by the New York Court of Appeals in *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382 (1999).  There, the court explained that a restraint will only be considered reasonable if it is *"no greater* than is required for the protection of the *legitimate interest* of the employer. . . ."  *Id.* at 388-89 (emphasis in original).

The Second Circuit Court of Appeals' decision in *Ticor* does not mandate a different result.  There, only a non-compete provision was at issue (restricting the employee from engaging in the business of title insurance in New York for six months).  173 F.3d at 387.  Moreover, as discussed further below, the facts of *Ticor* are readily distinguishable from the present case.

Plaintiffs' counsel argued at the hearing on the instant motion that the non-compete provision in the Agreement complements the non-solicitation provisions by giving Plaintiffs time to shore up their customer relationships and demonstrate to their customers that they have employees other than Mr. Bouk who are able to service their

accounts.  In other words, Plaintiffs argue that even if Mr. Bouk refrains from soliciting customers, the mere fact of his employment by a competitor presents a threat to goodwill. This argument is undermined by the language of the Agreement, which prohibits Mr. Bouk from providing any services, whether similar to those he provided to Plaintiffs or not, to any company that competes in any manner with Plaintiffs or their affiliates. Plaintiffs have offered no argument as to how this broad restriction on Mr. Bouk's ability to earn a living is necessary to protect their customer relationships, nor have they offered any evidence that their customer relationships have been or will be damaged simply by Mr. Bouk's presence at Cass.  Plaintiffs' customer goodwill is more than adequately protected by the Agreement's broad non-solicitation provisions, and there is no basis for the conclusion that additional protection is required in the form of a broad non-compete.

Plaintiffs also allege that Mr. Bouk concealed that he began working for Cass while still being paid by Veramark.  (Dkt. 18 at 5).  Plaintiffs appear to argue that the Court should infer from this that Mr. Bouk is an untrustworthy individual and that his assurances that he will not violate the non-solicitation provisions should not be accepted. These arguments are far too speculative.  Although the facts as alleged by Plaintiffs might ultimately bear on the issue of damages, at this stage of the proceedings generalized suspicion regarding the way Mr. Bouk has conducted himself is insufficient to satisfy Plaintiffs' burden. (Dkt. 13-1 at ¶¶ 27, 28).

In sum, there is no evidence that Mr. Bouk is violating the non-solicitation provisions of the Agreement, that Cass is attempting to solicit Veramark's customers with Mr. Bouk, or that the non-solicitation provisions are insufficient to protect Plaintiffs'

customer relationships and goodwill.  Rather, the evidence indicates the exact opposite.
As a result, and in view of the law in New York, Plaintiffs have failed to demonstrate
irreparable harm through the loss or threatened loss of customer goodwill.

### B.    Unique Services

Plaintiffs also argue that Mr. Bouk is a "unique" employee due to his relations
with customers, and therefore his employment by Cass in violation of the non-compete
necessarily constitutes irreparable harm.  Plaintiffs' argument is unconvincing.

New York has recognized that learned professionals may be deemed to provide
unique or extraordinary services.  *See Karpinski v. Ingrasci*, 28 N.Y.2d 45, 49 (1971)
(enforcing non-compete agreement against oral surgeon).  *Cf. BDO Seidman*, 93 N.Y.2d
at 389-90 (refusing to recognize non-compete agreement as enforceable simply due to
accountant's status as learned professional).  Additionally, under limited circumstances,
this recognition has been extended to employees other than learned professionals, where
the employer enables an employee to establish such a significant relationship with
customers that recognition of the employee's unique stature is appropriate.

The most seminal case on this issue is the Second Circuit Court of Appeals'
decision in *Ticor*.  The Second Circuit explained that in assessing an employee's
uniqueness for purposes of enforcing a restrictive covenant, a court should focus "on the
employee's relationship to the employer's business to ascertain whether his or her
services and value to that operation may be said to be unique, special or
extraordinary. . . ." 173 F.3d at 65.  Because "individual circumstances differ so widely,"

the Second Circuit explained that the inquiry "must of necessity be on a case-by-case basis." *Id.*

In *Ticor*, a title insurance salesman was recognized as unique where he had worked nearly his entire professional career for the company, there were extensive negotiations with the employee's attorney concerning the terms of the non-compete, the employee was one of the highest paid sales representatives with his total compensation exceeding $1.1 million, and the employee received expense account reimbursements exceeding $150,000 annually. *Id.* at 66-67, 71. Yet, it was not just those reasons that determined the outcome. Rather, the court in *Ticor* appeared to be persuaded by the fact that the costs and terms of title insurance in New York are fixed by law, and the potential client source was limited in scope. Therefore, under the circumstances, competition relied more heavily on personal relationships. *Id.* at 71; *see also Natsource LLC v. Paribello*, 151 F. Supp. 2d 465, 473 (S.D.N.Y. 2001) (broker of over-the-counter energy-related commodities was unique because he worked in a specialized field with few potential clients, his success depended on his ability to cultivate a relationship with his clients, and the company expended substantial resources to help cultivate those relationships).

Here, Plaintiffs contend that Mr. Bouk should be classified as a unique employee because he was Veramark's highest ranking sales executive. (Dkt. 4-2 at ¶ 5). Plaintiffs submit that Mr. Bouk "served as Veramark's senior-most executive point of contact with key customers and channel partners and was privy to all information pertaining to the Company's customer relationships, sales strategies and business development efforts."

(*Id.*).  Mr. Bouk's base salary exceeded $157,000 with other unspecified benefits. (*Id.* at ¶ 8).  Plaintiffs also state that Mr. Bouk spent "more than 50% of his working time out on the road" servicing Veramark's customers and "channel partners" and that he was "integral" in negotiating contracts with clients.  (*Id.* at ¶ 6).  Plaintiffs cite to three relationships that Mr. Bouk helped develop as part of his work for Veramark. (*Id.*).

Plaintiffs' proof in this regard is wholly insufficient to transform Mr. Bouk from an ordinary salesman into a unique employee. *See Columbia Ribbon & Carbon Mfg. Co., Inc. v. A-1-A Corp.*, 42 N.Y.2d 496, 500 (1977) (holding that a salesman was not unique and provided only commonplace services).  Not only do Plaintiffs fail to offer any specifics concerning Mr. Bouk's salary other than the annual base amount, but the amount does not come close to the type of compensation recognized in *Ticor* as contributing to an employee's uniqueness.  Moreover, the fact that Mr. Bouk was on the road for a significant portion of his job could not possibly make him unique.  Otherwise, virtually all salesmen would be classified as unique for purposes of a restrictive covenant analysis.  Moreover, while Plaintiffs contend in a conclusory fashion that they invested substantial resources into Mr. Bouk's ability to develop customer relations, they offer no specifics, not even disclosing the extent of any expense account that he may have used.  Mr. Bouk's knowledge of the intricacies of the sales operation at Veramark, or even his status as its highest ranking sales executive, does not transform him into a unique employee for purposes of a restrictive covenant analysis.  *See Reed, Roberts Assoc., Inc. v. Strauman*, 40 N.Y.2d 303, 309 (1976) (uniqueness cannot be based on knowledge of the intricacies of a business operation or the intrinsic value that an employee provides to

a business; otherwise, employees "in charge of operations or specialists in certain aspects of an enterprise [would become] virtual hostages of their employers.").

Perhaps most important to the analysis, there has been no proof offered by Plaintiffs that their customer base is limited and therefore, like in *Ticor*, the development of business depends greatly on the development of customer relationships. In an effort to satisfy the standard, Plaintiffs make conclusory statements that Veramark's "strategy" focuses on "relationship-building" because "relationships are a large part of a client's decision-making process." (Dkt. 4-2 at ¶ 7). But simply stating that a company values relationships with its clients and customers does not satisfy the standard set forth by *Ticor*. Plaintiffs describe their potential customers as any "large business with employees and offices throughout the U.S." (Dkt. 4-2 at ¶ 2). In other words, by Plaintiffs' own admission, their potential customer base is quite broad.

In sum, Plaintiffs have failed to establish that Mr. Bouk should be classified as a unique employee for purposes of this restrictive covenant analysis. Thus, Plaintiffs have not established irreparable harm on this basis.

### C.   Paragraph 7(g) of the Agreement

Plaintiffs argue that paragraph 7(g) of the Agreement mandates the granting of a preliminary injunction. That provision provides, in relevant part, as follows:

> [Mr. Bouk] agrees that the restrictions in this Section 7 are reasonable and necessary to protect the Confidential Information. [Mr. Bouk] expressly agrees that, in addition to any other rights or remedies which [Veramark] may have, [Veramark] shall be entitled to injunctive and other equitable relief to prevent a breach of this Section 7 . . . and [Mr. Bouk] consents to the entry of such an order and injunctive relief. . . .

(Dkt. 4-3 at ¶ 7(g)).

Plaintiffs' argument is unpersuasive. Providing for particular relief in an agreement cannot trump the factors to be considered by a court under New York law. *See Brown & Brown, Inc.*, 980 N.Y.S.2d at 640-41 ("[A]llowing a former employer the benefit of partial enforcement of overly broad restrictive covenants simply because the applicable agreement contemplated partial enforcement would eliminate consideration of the factors set forth by the Court of Appeals in *BDO Seidman*. . . ."). Although language in an agreement may buttress a conclusion of irreparable injury, it cannot replace the necessary analysis under New York law. Here, Plaintiffs have failed to establish irreparable harm. They cannot cure that failure of proof by relying upon language included in the Agreement.

## III.   Likelihood of Success on the Merits

Because Plaintiffs failed to meet their burden of establishing irreparable harm, the Court need not address the other elements relevant to a preliminary injunction motion. However, even if the Court were to find irreparable harm, a preliminary injunction would still not be appropriate due to Plaintiffs' failure to establish a likelihood of success on or sufficiently serious questions going to the merits.

The law in New York does not favor terms in an employment agreement that seek to prevent an employee from pursuing his or her chosen vocation after termination of employment. *Columbia Ribbon*, 42 N.Y.2d at 499. A covenant restricting competition in an employment agreement will be enforced only if "it is reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the general public

and not unreasonably burdensome to the employee." *Reed, Roberts Assoc.*, 40 N.Y.2d at 307.

"A restraint is reasonable only if it:  (1) is *no greater* than is required for the protection of the *legitimate interest* of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public." *BDO Seidman*, 93 N.Y.2d at 388-89 (emphasis in original) (citations omitted).  A failure to satisfy any prong renders the covenant invalid. *Id.* at 389.

New York law limits the cognizable employer interests under the first prong to: (1)  protection against misappropriation of the employer's trade secrets or confidential customer lists; (2)  protection from competition by a former employee whose services are unique or extraordinary; or (3)  prevention of the exploitation or appropriation of the goodwill of a client or customer served by a former employee during employment, where the relationship was created and maintained at the employer's expense. *Id.* at 388-392.

Here, Plaintiffs are not likely to prevail on their claims seeking to enforce the non-compete portion of the Agreement.  The Agreement seeks to prevent Mr. Bouk from "directly or indirectly" performing services for "any enterprise that engages in competition with the business conducted by" Veramark or its affiliates "anywhere in the world." (Dkt. 4-3 at ¶ 7(c)).  As discussed above, neither the protection of Veramark's customer goodwill nor Mr. Bouk's purported uniqueness justifies such a broad non-compete provision.  Similarly, while Plaintiffs have suggested that proof may ultimately

develop that Mr. Bouk misappropriated confidential information, at this stage of the proceedings there is simply no evidence to support that conclusion.[5]

Plaintiffs argue that even if overly broad, the non-compete portion of the Agreement should be partially enforced. Whether to partially enforce an overly broad non-compete agreement is left to the discretion of the court based upon a case specific analysis. *Brown & Brown, Inc.*, 980 N.Y.S.2d at 640 (quoting *BDO Seidman*, 93 N.Y.2d at 394).

"A legitimate consideration against [partial enforcement of an otherwise overbroad restrictive covenant] is the fear that employers will use their superior bargaining position to impose unreasonable anti-competitive restrictions, uninhibited by the risk that a court will void the entire agreement, leaving the employee free of any

---

[5]   Plaintiffs submitted a declaration concerning a forensic analysis of Mr. Bouk's company-issued smart phone and computer. (Dkt. 26). That declaration concludes that the smart phone was wiped clean of any data. (*Id.* at ¶ 4). In addition, according to the forensic analysis, seven separate USB flash drives were plugged into Mr. Bouk's computer in January 2014, several "DropBox" folders were deleted between January 13, 2014 and January 19, 2014, and a file entitled "Copy of Calero Active Account Report 20140108.xlsx" was deleted on January 31, 2014. (*Id.* at ¶¶ 5-7). The clear import of this information is that Mr. Bouk was accessing large amounts of material in January 2014, and then deleting evidence of that access from electronic devices issued to him by Veramark. Mr. Bouk has submitted a declaration attempting to explain some of the activity and denying improper conduct. (Dkt. 27). Although information may develop as part of discovery in this action or otherwise that suggests Mr. Bouk misappropriated confidential information from Veramark in the weeks leading up to his departure, at this stage Plaintiffs concede that they do not have any such evidence. Plaintiffs' suspicions cannot support issuance of a preliminary injunction. *See Ikon Office Solutions, Inc. v. Usherwood Office Tech., Inc.*, 21 Misc. 3d 1144(A), 875 N.Y.S.2d 820, 2008 N.Y. Misc. LEXIS 7059, at *16-17 (Sup. Ct., Albany Cnty. 2008) (notwithstanding employer's evidence that employees sent confidential information to their personal email accounts in days leading up to resignation from employment, the evidence of actual misappropriation fell short of the proof necessary to support an award of injunctive relief).

restraint." *BDO Seidman*, 93 N.Y.2d at 394.   Courts have held that partial enforcement is inappropriate where an employer attempts to prohibit solicitation of its entire customer base after the *BDO Seidman* decision.   *See Brown & Brown, Inc.,* 980 N.Y.S.2d at 640; *Scott, Stackrow & Co., C.P.A.'s v. Skavina*, 9 A.D.3d 805, 807 (3d Dept. 2004).   In other words, an employer should be on notice by reason of *BDO Seidman* that a restrictive covenant is overly broad where it is not targeted to solicitation of customers with whom the employee acquired a relationship through his employment.

Here, Plaintiffs have failed to demonstrate "an absence of overreaching, coercive use of dominant bargaining power, or other anti-competitive misconduct. . . ." *BDO Seidman*, 93 N.Y.2d at 394.   The Agreement was signed in January 2008, almost nine years after the Court of Appeals' decision in *BDO Seidman*.   It was entered into as a condition of Mr. Bouk's employment, as opposed to "imposition in connection with a promotion to a position of responsibility and trust. . . ." *Brown & Brown, Inc.*, 980 N.Y.S.2d at 640.   Moreover, given the protections already provided by the non-solicitation provisions of the Agreement, Veramark cannot be said to have included the non-compete "in good faith . . . to protect a legitimate business interest. . . ." *BDO Seidman*, 93 N.Y.2d at 394.   On its face, the non-compete is overreaching and coercive, and partial enforcement would not be appropriate.   The geographical scope of the covenant – extending to "anywhere in the world" – only reinforces this conclusion.

The Court further notes that even if it was inclined to partially enforce the non-compete, the Agreement's language would render such an exercise inappropriate.   A court should not attempt to partially enforce a non-compete provision where its

infirmities are so numerous that the court would be required to rewrite the entire provision. *Leon M. Reimer & Co. v. Cipolla*, 929 F. Supp. 154, 160 (S.D.N.Y. 1996). In this case, the Agreement prohibits Mr. Bouk from providing, directly or indirectly, any services to any company that competes with Veramark or its affiliates anywhere in the world. Any partial enforcement of this provision would necessarily go beyond "blue penciling" and become a wholesale revision.

As a result, the Court concludes that even if Plaintiffs had demonstrated irreparable harm, a preliminary injunction would not be appropriate because Plaintiffs do not have a likelihood of success in ultimately being able to enforce the non-compete portion of the Agreement.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for a preliminary injunction is denied.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:    April 2, 2014
          Rochester, New York